## SHIPMAN ENGINE CO. v. McLAUGHLIN.

(Circuit Court, D. Massachusetts. June 28, 1894.)

No. 2,889.

PATENTS—LIMITATION OF CLAIM—HYDROCARBON FURNACES.

The Shipman patent, No. 304,365, for improvements in hydrocarbon furnaces, in view of its construction in the case of Shipman Engine Co. v. Rochester Tool Works, 34 Fed. 747, the language of its specifications, and the proceedings in the patent office, must be limited, in a suit where the parties and the evidence are substantially the same, as to both its first and second claims, to a structure in which the oil is drawn upward from the reservoir to the atomizing jet by suction, and an apparatus in which the oil is fed from the reservoir to the atomizing jet by gravity is not within the patent.

This was a suit by the Shipman Engine Company against George G. McLaughlin for infringement of a patent.

Samuel J. Elder and E. A. Whitman, for complainant.

Charles E. Mitchell and Josiah Sullivan, for defendant.

COLT, Circuit Judge. This suit is for infringement of letters patent No. 304,365, granted Albert H. Shipman, for improvements in hydrocarbon furnaces.

In the case of This Complainant v. Rochester Tool Works, 34 Fed. 747, the same patent was before Judge Wallace. The evidence in the two cases is substantially the same, and the parties are really the same, though the nominal defendant in the present suit is different. In legal effect, this suit stands as if it were a proceeding in the nature of contempt, brought against the Rochester Tool Company in the original suit, or a new bill brought against that company by the complainant. Judge Wallace held that the Shipman patent possessed patentable novelty, and that the defendant infringed the second claim. In the apparatus which was found to infringe this claim, the oil reservoir was located below the atomizer, and the oil was drawn upward by suction from the reservoir. After that decision the defendant, under the advice of counsel, made certain changes in the construction of its furnace, by locating the oil reservoir above the atomizer, and by inserting a stop valve in the oil pipe. The question in this case is whether this apparatus infringes the first claim of the patent. This claim does not describe the oil reservoir as located below the atomizer, and the oil drawn upward therefrom, and is therefore broader in its language than the second claim.

The solution of this question turns upon Judge Wallace's construction of the patent, the language of the patent itself, and the file wrapper and contents. Judge Wallace held that Shipman was

not a pioneer in the art of utilizing liquid fuel as a substitute for coal for producing heat or steam; that he only assumes to have invented certain improvements in hydrocarbon furnaces for use under a steam boiler; that his apparatus consisted of a "combination of parts, each of which was old and well-known when he took up the subject, several of which had previously been used in such burners to perform in combination the functions they performed in his apparatus, but all of which had never before been combined together in the same apparatus." He further held that the invention of Shipman resided in his valve or regulator in the steam pipe, by means of which the flow of oil is controlled by the steam suction which is automatically regulated by the valve; that this regulator performed a new function, in that it dispensed with an additional valve in the oil pipe which existed in prior furnaces. The old burners described in the Caldwell, Burbank, and Kite patents belong to the Shipman type, where the oil reservoir is located below the atomizer, and the oil is drawn up by suction; and Judge Wallace declares that these burners contain the combination found in the Shipman patent, with the exception of the regulator. The Dickerson patent, which belongs to the other type of burners, where the oil reservoir is placed above the atomizer, and the oil is fed to the atomizing jet by gravity, Judge Wallace decided, did not anticipate Shipman, because the oil is not obtained by suction, but by gravity, and because the regulator is required to be applied to the oil pipe as well as the steam pipe; in other words, the Dickerson apparatus contains a separate valve in each pipe, and the supply of oil is regulated by the valve in the oil pipe.

From a careful perusal of Judge Wallace's opinion, I think the Shipman patent must be limited to that class of hydrocarbon burners in which the oil is drawn upward by means of suction from a reservoir located below the atomizer.

This construction of the patent is confirmed by the language of the specification which says, "From the reservoir, Q, the liquid fuel is drawn upward through the pipe or oil conduit."

This construction is further confirmed by what took place in the patent office. The first claim of the patent on which the complainant now relies was twice rejected on reference to the Dickerson patent, whereupon Shipman writes as follows to the commissioner of patents:

"In the Dickerson invention the naphtha 'flows' to the burner, while in applicant's the fluid is raised to the jets by the action of the steam; and hence the supply of naphtha requires to be regulated by a cock operated by an attendant, in the one case, while in applicant's apparatus no liquid is delivered from the oil reservoir to the combustion devices, except when the steam is being discharged from its jet."

It is also significant that Shipman changed the words "fed upward," in his original application, to "drawn upward," as now found in his specification.

In view of these considerations, I think that the first claim of the Shipman patent, although broader in its language than the second claim, is limited to a structure in which the oil is drawn

upward from the reservoir to the atomizing jet by suction, and that an apparatus in which the oil is fed from the reservoir to the atomizing jet by gravity is not within the patent, and therefore cannot infringe it.

In an apparatus where the oil is fed by gravity, the oil pipe must, of necessity, contain some form of valve or regulator, in order to stop the flow of oil when the burner is not in operation.   The defendant's apparatus has a stop valve in the oil pipe which opens when the steam reaches a certain pressure, and which closes when that pressure is reduced to a certain point; and the opening of the stop valve permits the oil to flow to the atomizing jet, and the closing of the valve prevents its further flow.   In this respect it differs in construction and mode of operation from the Shipman device.

It may be true, as contended by the complainant, that, after the oil has reached the atomizing jet, its discharge, when the apparatus is in operation, is regulated, in part at least, by the steam pressure in the steam pipe, and that to this extent it resembles the Shipman burner, and differs from the Dickerson burner.   Admitting this to be so, I do not think this circumstance brings the defendant's burner within any fair or legitimate construction of the Shipman patent.

Bill dismissed.